**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Glen Scott Farley, | Civil No. 07-2415 (DWF/SRN) |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| | **OPINION AND ORDER** |
| Pamela Hoppe and Minneapolis Retail Meat Cutters & Food Handlers Welfare Fund, | |
| Defendants. | |

Glen Scott Farley, *Pro Se*, Plaintiff.

Amy L. Court, Esq., McGrann Shea Anderson Carnival Straughn & Lamb, Chtd., counsel for Defendants.

**INTRODUCTION**

The above-entitled matter came before the Court on January 4, 2008, pursuant to a Motion for Summary Judgment brought by Defendants Pamela Hoppe and Minneapolis Retail Meat Cutters & Food Handlers Welfare Fund (collectively "Defendants"). This case arose from Plaintiff's allegations that Defendants wrongfully refused to reimburse Plaintiff for certain claimed benefits. For the reasons stated below, Defendants' motion is granted.

**BACKGROUND**

Defendant Minneapolis Retail Meat Cutters & Food Handlers Welfare Fund (the "Fund") is a multi-employer, jointly-trusteed fringe benefit plan. Rainbow Foods is a

contributing employer to the Fund.  Plaintiff was a part-time employee at Rainbow Foods.  At the time Plaintiff was employed at Rainbow Foods, Plaintiff was entitled to benefits from the Fund if he met the eligibility requirements.

The Fund was established pursuant to an Agreement and Declaration of Trust (the "Trust Agreement").  The Trust Agreement authorizes the Board of Trustees to obtain and maintain policies for the payment to eligible participants.  The Trust Agreement explains that:

> Such policies of insurance shall be in such forms and in such amounts and may contain such provisions and be subject to such limitations and conditions as the Trustees, in their sole discretion, may from time to time determine and shall cover such Participants . . . as the Trustees, pursuant to the provisions hereof, shall from time to time determine eligible for benefits as herein provided. . . .  The Trustees are expressly authorized, by unanimous vote, to establish and maintain a plan or plans to provide any and all of the health and welfare benefits, as the trustees in their sole discretion may determine[.]

(Affidavit of Karen Holt ("Holt Aff.") Ex. A at 13-14.)  The Trust Agreement further states that "the Trustees shall have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters."  (Holt Aff. Ex. A at 19.)

The Trust Agreement also provides that the Trustees may employ an "Administrative Manager":

> who shall, under the direction of the Trustees . . . administer the office or officers of the Trust Fund and of the Trustees, coordinate and administer the accounting, bookkeeping and clerical services, provide for the coordination of actuarial services . . ., prepare . . . all reports and other documents to be prepared, filed or disseminated by or on behalf of the Trust in accordance with law, assist in the collection of contributions required to be paid to the Trust Fund by Employers and perform such other duties and furnish such

2

> other services as may be assigned, delegated or directed or as may be contracted by or on behalf of the Trustees.

(Holt Aff. Ex. A at 17.) Here, the Trustees appointed Wilson McShane Corporation as its Administrative Manager. Defendants represent that the Trustees also delegated the authority to make initial claim adjudications in accordance with the Trust Agreement and the Summary Plan Description (the "Plan") to Wilson McShane Corporation. Defendant Pamela Hoppe was an administrative employee of Wilson McShane Corporation and was assigned to the Fund during the relevant time here.

The Plan explains that an employee is eligible to receive benefits if they "are employed by an employer that pays contributions to the Fund on [their] behalf[.]" (Holt Aff. Ex. B at 6.) The Plan further provides that a part-time employee's effective date of eligibility is as follows:

> You will become eligible under Plan 2, which provides coverage for part-time employees only after working 12 months for a contributing employer, during which the employer makes at least one contribution on your behalf in each of the 12 months. Your coverage will begin on the first day of the first month following the month in which you meet the eligibility requirements of this section.

(Holt Aff. Ex. B at 6.) In addition, the Plan states:

> Benefits under this Plan will be paid only if the Board of Trustees (or its Plan Administrator) decides in its discretion that the applicant is entitled to them. The Plan will be interpreted and applied in the sole discretion of the Board of Trustees (or its delegate, including but not limited to, its Plan Administrator). Such decision will be final and binding on all persons covered by the Plan who are claiming any benefits under the Plan.

(Holt Aff. Ex. B at 44.) If a claim is denied, the Plan provides that an employee has the right to appeal the decision and request a review of the claim. According to the Plan, an

3

employee has "180 days after [they] receive the notice of an adverse benefit determination to file [their] appeal in writing to the Fund Office." (Holt Aff. Ex. B at 4.) Upon receipt of the appeal, the Plan provides that the Board of Trustees will make a decision as to the appealed claims. The Plan states that if an adverse benefit determination is then made by the Board of Trustees, the Plan provides the employee with notice of such determination, including a statement of the employee's "right to bring a civil action under Section 502(a) of ERISA after they have exhausted the Plan's claims review and appeal procedures." (Holt Aff. Ex. B at 5.) The Plan states that the employee "will be given maximum opportunity to present [their] viewpoint on any denied claim." (Holt Aff. Ex. B at 5.) However, the Plan also states that employees "may not begin any legal action . . . until [they] have followed the procedures and exhausted the review opportunities described here." (Holt Aff. Ex. B at 5.)

Rainbow Foods submitted monthly part-time contributions to the Fund on Plaintiff's behalf starting in September 2005 and continuing through January 2006. Rainbow Foods laid Plaintiff off during February and March 2006 and made no contributions to the Fund on his behalf during that time. Rainbow Foods then submitted part-time contributions to the Fund on Plaintiff's behalf for the months of April through December 2006. Defendants assert that Plaintiff first became eligible for benefits from the Fund on November 1, 2006.[1]

---

[1] Rainbow Foods stopped making contributions to the Fund on Plaintiff's behalf in December 2006. Plaintiff's eligibility thereafter ceased in March 2007, pursuant to the Fund's rules.

4

Plaintiff submitted claims to the Fund totaling $1,297.16 for services provided on January 19, 2006. Defendants denied these claims, stating that coverage had been terminated.

Plaintiff asserts he is entitled to payment for these claims from the Fund because the Fund issued an ID card to Plaintiff in December 2005. Defendants do not dispute that the Fund issued the ID card, but contend that the issuance was in err as a result of a computer malfunction.[2] In response, on February 19, 2006, Hoppe sent a letter to Plaintiff that stated as follows:

> It has been brought to my attention that you are not yet eligible for coverage under this health and welfare plan. That is because we have not yet received contributions from your employer for 12 consecutive months.
>
> We erred in determining that your coverage became effective on December 1, 2005 and should not have sent you a medical card.
>
> Please accept my apology for this mistake and give me a call at [. . .] if you have any questions concerning your future eligibility.

(Holt Aff. Ex. D.) After receipt of the February 19, 2006 letter, Plaintiff submitted additional claims totaling $6,248.45 to the Fund for services provided on July 7, July 14, August 12, and August 19, 2006. Defendants denied each of these claims based on Plaintiff's ineligibility and provided notice to Plaintiff by sending explanation of benefits forms. The explanation of benefits forms set forth the Fund's claim review and appeal

---

[2] In addition, Defendants assert that any reliance by Plaintiff on the ID card was unreasonable because the back of the ID card stated, "This card does not guarantee coverage." (Holt Aff. Ex. C.)

5

procedures consistent with the procedures set forth in the Plan. Plaintiff did not seek review of any of the above-referenced claims denied by Defendants.

On January 4, 2007, Plaintiff filed a Statement of Claim and Summons in Scott County Conciliation Court asserting that Defendants owed him a total of $4,362.37 in declined claims, filing fees, and costs. Defendants assert that they received a copy of the Statement of Claim and Summons in early May 2007. Defendants thereafter removed the action to this Court. On November 14, 2007, Defendants filed their Motion for Summary Judgment.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the

record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Failure to Exhaust Administrative Remedies

Defendants assert that Plaintiff is barred from seeking relief from this Court because Plaintiff failed to exhaust his administrative remedies prior to commencing this action. Plaintiff did not file an opposition in response. However, Plaintiff appeared at the January 4, 2008 hearing and the Court, over the objection of Defendants, allowed Plaintiff to state a response on the record. In doing so, Plaintiff did not explain why he failed to exhaust administrative remedies. Instead, Plaintiff's main argument was that when he received the ID card, he relied on it when making his appointments. In addition, Plaintiff asserted that Defendants should pay for his submitted claims because Defendants admit that they erred in sending the ID card.

ERISA does not expressly mandate exhaustion of administrative or plan remedies. *Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994). Rather, plan beneficiaries must exhaust their administrative remedies when exhaustion is clearly required by the particular plan involved. *Burds v. Union Pac. Corp.*, 223 F.3d 814, 817 (8th Cir. 2000); *see also Wert v. Liberty Life Assurance Co. of Boston, Inc.*, 447 F.3d 1060, 1063 (8th Cir. 2006) (stating that the "exhaustion requirement applies so long as the employee has notice of the [review] procedure"). "When an ERISA benefits plan clearly requires

exhaustion, a claimant's failure to exhaust her administrative remedies bars him or her from seeking relief in federal court." *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 884 (8th Cir. 2002).

Here, the Plan provides that an employee has a "right to bring a civil action under Section 502(a) of ERISA after they have exhausted the Plan's claims review and appeal procedures[,]" and further explains that an employee "may not begin any legal action . . . until [they] have followed the procedures and exhausted the review opportunities described [in the Plan]." (Holt Aff. Ex. B at 5.) The Court concludes that these provisions clearly require exhaustion. In addition, it is undisputed that Plaintiff did not file an appeal in writing to the Fund Office for any of his denied claims. Further, there is no evidence, and Plaintiff did not argue, that exhausting the review and appeal procedures set forth in the Plan would be futile. Therefore, the Court concludes that Plaintiff is barred from bringing his action here and grants summary judgment in Defendants' favor because Plaintiff failed to exhaust his administrative remedies.[3]

### III.    Attorney Fees

---

[3] Because the Court concludes that Plaintiff is barred from seeking relief from this Court because of his failure to exhaust administrative remedies, the Court need not address whether the Fund acted arbitrarily and capriciously in determining that Plaintiff was not eligible for benefits. However, the Court notes that even though Plaintiff's reliance on the ID card is likely not a probable defense here, because Defendants admittedly erred by sending the ID card in December 2005 and because Plaintiff incurred $1,297.16 in costs for services provided before Defendants explained the err, a fair and reasonable result may be for Defendants to offer to pay to Plaintiff $1,297.16 for that claim. Although it seems this approach would reflect good business practice, the Court will leave this for the Defendants to decide.

8

ERISA permits the Court "in its discretion [to] allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In determining whether to do so, the Court considers five factors: (1) the degree of Plaintiff's culpability or bad faith; (2) Plaintiff's ability to pay; (3) whether an award of fees would deter other persons from acting under similar circumstances; (4) whether Defendants sought to benefit all participants and beneficiaries of the plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984). These factors are guidelines and are "by no means exclusive or to be mechanically applied." *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002).

Here, there is no evidence that Plaintiff acted in bad faith. Plaintiff stated at oral argument that he proceeded based on the fact that he had received his ID card in the mail. Plaintiff also stated that his store manager told him early on in his employment that he would become eligible after ninety days. This is not a situation where Plaintiff is to blame for the fees and costs that Defendants have incurred. Plaintiff originally filed his action in conciliation court. It was Defendants that removed the case here. Plaintiff, therefore, proceeded in a way that would have kept fees and costs at a minimum. Thus, this factor weighs against awarding fees. Because there is no evidence of Plaintiff's ability to pay, the Court finds the second factor neutral. As to the other factors, because of the circumstances of this case, including the fact that Defendant erred in sending Plaintiff an ID card which, at a minimum, created the confusion for Plaintiff for a period of time, the Court finds that imposing fees would not deter other plaintiffs from bringing

9

claims during their ineligibility period or before exhausting their administrative remedies. Nor is this a case that would benefit all participants or resolve a significant legal question under ERISA. Although the Court notes that the merit of Defendants' position is stronger than Plaintiff's based on the plain language of the Plan, this factor alone does not outweigh the other factors. Therefore, Defendants' request for attorney fees and costs is denied.

## CONCLUSION

Upon receipt of this Opinion, Plaintiff may take it and discuss it with whomever he wishes. As indicated above in footnote three, the Court notes that it may be in the best interests of the parties to negotiate a resolution of this dispute rather than pursue additional litigation. As explained at the January 4, 2008 hearing, Magistrate Judge Susan Richard Nelson is available to assist in the negotiation of a settlement should the parties find such services helpful. If the Court may be of assistance in this matter, the parties should contact Gina Olsen, Calendar Clerk for Judge Donovan W. Frank, at 651-848-1296, or Beverly Riches, Calendar Clerk for Magistrate Judge Susan Richard Nelson, at 612-664-5490.

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. 10) is **GRANTED.**

2. Plaintiff's Statement of Claim and Summons (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

3.  Defendants' request for attorney fees and costs is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 23, 2008                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            Judge of United States District Court